UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 95-10117
Summary Calendar

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DAVID PAUL LANCASTER,

Defendant-Appellant.

Appeal from the United States District Court for the
Northern District of Texas
(3:94-CR-219-1-G)

October 27, 1995

Before GARWOOD, WIENER and PARKER, Circuit Judges.[*]

GARWOOD, Circuit Judge:

Defendant-appellant David Paul Lancaster (Lancaster) appeals
the district court's denial of his motion to suppress evidence.
Lancaster pleaded guilty to a charge of possession with intent to
distribute cocaine, conditioned on his right to appeal the district
court's denial of his motion to suppress.  We affirm.

---

[*]Local Rule 47.5 provides:  "The publication of opinions
that have no precedential value and merely decide particular cases
on the basis of well-settled principles of law imposes needless
expense on the public and burdens on the legal profession."
Pursuant to that Rule, the Court has determined that this opinion
should not be published.

## Facts and Procedural Background

On the basis of information obtained from confidential sources, narcotics officers from the city of Garland, Texas, police department initiated surveillance of Lancaster and two companions around 5:00 p.m. on June 13, 1994. Lancaster was followed from his place of work to several intermediate locations, and finally to the parking lot of the Hypermart store in Garland. Lancaster parked his truck, which he was using to pull a ski boat, in the fire lane in front of the Hypermart. One of Lancaster's companions, Steven Craig Medrano (Medrano), drove a BMW belonging to Lancaster and parked it in a handicapped parking space near the fire lane. Lancaster's BMW lacked a proper handicapped parking permit. Lancaster's other companion, James Michael Hammes (Hammes), also parked his van in the fire lane, just in front of Lancaster's truck.

While continuing their surveillance of Lancaster and his companions, the Garland narcotics officers radioed the Garland police department for dispatch of a patrolman to investigate these parking violations and to ascertain the identities of the persons under surveillance. Officer David Blair (Blair) arrived at the Hypermart parking lot and found the vehicles parked as described above. Blair approached four individuals standing near these illegally parked vehicles—Lancaster, Medrano, Hammes, and a female employee of the key franchise located in the Garland Hypermart, Carrie Ruiz (Ruiz)—and asked for identification. Hammes and Medrano stated that they did not have driver's licenses, and

2

Lancaster produced his.  At that point, Hammes admitted to Blair that he might have an outstanding warrant for his arrest in Dallas, Texas.  Blair confirmed this and arrested Hammes, first patting him down and then placing him in the back of the patrol car.

Blair then began to issue a citation for the BMW.  Lancaster asked Blair to issue the citation to him, even though Lancaster had previously told Blair that he had driven the truck, and not the BMW.  His suspicions raised by these conflicting stories, Blair had begun to question Lancaster when Officer Andrew Lowen (Lowen) arrived on the scene.  Blair apprised Lowen of the situation, and the two officers continued to question Lancaster and Medrano.  Lancaster then admitted that he had driven the truck and that Medrano was the driver of the BMW.

Deciding to question the two suspects separately, Blair continued his questioning of Medrano and Lowen escorted Lancaster over to his patrol car, approximately fifty yards away.  Medrano, who had initially claimed that he did not have a driver's license, at this point produced a license for Officer Blair.  Medrano asserted that he had not previously produced this license because he believed that it had expired.  Blair found that the license had not expired, and further ascertained that the address on the license was not the address which Medrano had previously given him.  Blair then arrested Medrano—determining that he would be unable to properly merely issue a citation for the illegally parked BMW based on Medrano's inconsistent responses—and had Medrano empty his pockets.  When Medrano failed to empty his pockets completely,

3

Blair searched Medrano's pockets and found two small baggies containing what appeared to be amphetamines. After calling out and displaying these baggies to Lowen, who was questioning Lancaster some fifty feet away, Blair put handcuffs on Medrano and placed him in a patrol car.

Hearing Blair call to him and witnessing that Blair had found something of consequence in Medrano's possession, Lowen decided to interrupt his questioning of Lancaster and assist Blair. The present appeal turns on the events which occurred next, and we will return to the facts surrounding Lancaster's arrest in our discussion of the merits of Lancaster's claim.

Following Lancaster's arrest, Lowen searched the BMW, finding 13.2 pounds of methamphetamine, 24 grams of cocaine, 186 grams of marihuana, and $112,000 in U.S. currency. A search of the truck uncovered 1.9 pounds of methamphetamine, 2.6 pounds of cocaine, 7.3 ounces of marihuana, and $59,460 in U.S. currency. Seized from the van were 24.8 grams of heroin and two grams of methamphetamine. Lancaster was subsequently indicted for: (1) conspiracy to possess with intent to distribute methamphetamine and cocaine; (2) aiding and abetting possession with intent to distribute methamphetamine; (3) aiding and abetting possession with intent to distribute cocaine; and (4) aiding and abetting possession and use of a firearm.

The district court held an evidentiary hearing on Lancaster's motion to suppress on September 29, 1994. Based on the evidence brought forward during this hearing, the district court found that

4

Officer Blair had reasonable suspicion for the investigatory stop of Lancaster, and that Lowen had probable cause for subsequently arresting Lancaster. The district court therefore denied Lancaster's motion to suppress on October 21, 1994.

Subsequent to the district court's ruling on this motion to suppress, Lancaster entered a conditional plea of guilty to the third count of the indictment, for aiding and abetting possession with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B) and 18 U.S.C. § 2. The remaining counts of the indictment were dismissed. On January 31, 1995, the district court sentenced Lancaster to 150 months' confinement, to be followed upon his release by a 4-year period of supervision and a $5,000 fine.

Lancaster timely brings this appeal.

## Discussion

As this Court noted in *United States v. Roch*, 5 F.3d 894 (5th Cir. 1993), when a defendant is subjected to a search—or arrested—without a warrant, the government bears the burden of proving that it had reasonable suspicion for seizing, or probable cause for arresting, the defendant. *Id.* at 897. In the present case, it is undisputed that Lancaster was detained, and subsequently arrested, without a warrant. Lancaster contends that his rights under the Fourth Amendment were thereby violated, and that the district court erred in denying his motion to suppress the evidence resulting from this unconstitutional search and seizure.

The first question presented by this appeal is whether Officer

Blair acted properly in initially detaining Lancaster. The district court found that Blair had a "reasonable suspicion" which warranted initiation of the investigatory detention, a finding which we review *de novo*. *Id.*

In *Terry v. Ohio*, 88 S.Ct. 1868 (1968), the United States Supreme Court determined that a police officer may stop and briefly detain a person, for investigative purposes, if the officer has "reasonable grounds" for such a detention. The Court stated that the judicial inquiry into the propriety and reasonableness of a search or seizure "is a dual one—whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Id.* at 1879. Grappling with the first prong of this inquiry, the district court noted our observation that, "The prosecution must demonstrate a 'minimal level of objective justification for the officer's actions, measured in light of the totality of the circumstances." *United States v. Tellez*, 11 F.3d 530, 532 (5th Cir. 1993) (quoting *United States v. Wangler*, 987 F.2d 228, 230 (5th Cir. 1993) (citations omitted)), *cert. denied*, 114 S.Ct. 1630 (1994).

In the present case, Officer Blair arrived at the Hypermart parking lot to find three vehicles illegally parked. Observing a group of four persons standing close to these vehicles, Blair approached this group and began questioning the individuals—including Lancaster—regarding the illegally parked vehicles. In *United States v. Shabazz*, 993 F.2d 431 (5th Cir.

6

1993), we concluded that, in connection with the *Terry* stop of a vehicle for a moving violation, an officer may request a driver's license, proof of insurance, proof of registration, run a computer check thereon and issue a citation. *Id.* at 437. We hold that the *Shabazz* rationale is applicable here. Therefore, having determined that he was conversing with the drivers of the illegally parked vehicles, Officer Blair was certainly justified in detaining these persons in order to ascertain their identities and issue the appropriate citations. From the initial questioning of Lancaster and his companions, through the arrest of Hammed and the decision to separate Medrano and Lancaster for individual examination, Officer Blair—later with the assistance of Officer Lowen—had a consistent, two-fold purpose of identifying the persons involved in this episode of illegal parking, and clarifying the roles of each person involved. The lies and inconsistent statements made by the suspects served to complicate and delay the police officers' justified solicitations of necessary information, all the while reenforcing the officers' initial "reasonable suspicions."

As Officer Blair's initiation of the investigatory detention at issue was clearly justified, we turn to whether the district court erred in finding that Officer Lowen did not violate his Fourth Amendment rights when Lowen conducted a pat-down search of Lancaster's person.

The district court found the following facts.[1]  When Officer

---

[1] We review a district court's finding of facts on a motion to suppress under the clearly erroneous standard. *United States v. Richard*, 994 F.2d 244, 247 (5th Cir. 1993); *United States*

7

Lowen arrived at the scene, Officer Blair had begun questioning Lancaster regarding his inconsistent statements as to who had driven the BMW. Blair apprised Lowen of the situation and the officers briefly questioned Medrano and Lancaster regarding their identities and addresses. Lancaster returned to his earlier story, that he had driven the truck, and that Medrano was the driver of the BMW. Then, the two officers separated Medrano and Lancaster for further questioning; Blair spoke individually with Medrano while Lowen examined Lancaster. Lowen observed that Lancaster was nervous and appeared to be under the influence of amphetamines. Troubled by Medrano's conflicting statements regarding his driver's license and his identity, Blair arrested and searched Medrano, finding baggies which appeared to contain amphetamines. At this point, Blair called out to Lowen and displayed a baggie containing what Lowen suspected were controlled substances. Lowen believed that Medrano was going to be placed under arrest, and, as dusk was approaching, Lowen decided to pat Lancaster down—for reasons of "pure officer safety"—so that he might assist Blair. Before commencing this pat down, however, Lowen specifically advised Lancaster that he was not under arrest. Lowen used neither force nor handcuffs. It was at this point, *before* Lowen placed Lancaster under arrest, that Lancaster volunteered that he was in possession of marihuana. Lowen's subsequent search of Lancaster confirmed this admission.

The district court considered the assertedly contrary

*v. Ponce*, 8 F.3d 989, 997 (5th Cir. 1993).

8

testimony of Carrie Ruiz (Ruiz), the fourth person in the group gathered in the Hypermart parking lot, and found that Ruiz's testimony did not fatally undermine the above findings. Ruiz, who testified that she had been sitting on the hood of a squad car while Lowen was questioning Lancaster near the back door of the car, could not, however, see or hear what was going on. Lowen called Ruiz to the back of the car so that she might assist him by holding the plastic bag into which Lowen was placing Lancaster's belongings. Ruiz further testified that, at the time she arrived at the back of the car, Lancaster was in the "spread eagle" position, and that Lancaster was attempting to explain to Lowen that he had marihuana; at this point, Ruiz thought that Lancaster was under arrest.

The district court noted that Ruiz's testimony was not inconsistent with the account of Lancaster's arrest given by Lowen. Since Ruiz was unable to see or hear what was going on at the back of the car before she was called back to assist Lowen, she could not have heard Lowen tell Lancaster that he was not under arrest. Neither could she have known whether the statement she heard Lancaster make regarding his possession of marihuana was the first such profession he had made, or whether he had already admitted his possession, and was subsequently reiterating, or even attempting to explain, this earlier profession of guilt.

We find no reason to conclude that the district court's findings of fact are clearly erroneous. With regard to Ruiz's testimony, there is no conclusive support for Lancaster's

9

contentions that Ruiz's testimony contradicts the statements made by Lowen. As the district court observed, the accounts given by Ruiz and Lowen are not necessarily inconsistent. We accept the district court's finding that Lancaster was not placed under arrest until *after* he volunteered that he was in possession of marihuana.[2] This established, we must consider whether Lowen's decision to pat Lancaster down constituted a violation of Lancaster's Fourth Amendment right against illegal searches and seizures.

In *Terry v. Ohio, supra*, the Supreme Court established that, while a police officer's initial detention of a suspect might be constitutionally sound, "A search for weapons in the absence of probable cause to arrest, however, must, like any other search, be strictly circumscribed by the exigencies which justify its initiation." S.Ct. at 1882 (citations omitted). The Court went on to conclude, "Thus it must be limited to that which is necessary for the discovery of weapons which might be used to harm the

---

[2]Lancaster claims that he was *effectively* placed under arrest prior to his admission that he was in possession of marihuana. The district court was not required to credit Lancaster's contention that he has been handled by the criminal justice system so many times that he would know better than to volunteer such information unless he thought he was under arrest. Additionally, the district court's finding that Lowen specifically told Lancaster that he was not under arrest is free of clear error, as Lancaster failed to produce any compelling evidence showing otherwise. Moreover, as noted above, Ruiz's testimony is not necessarily inconsistent with Lowen's. And, even if Lowen demanded that Lancaster assume a "spread eagle" position for the pat down, this Court has held that a police officer may use "some force" without exceeding the scope of a *Terry* stop. *United States v. Tellez*, 11 F.3d 530, 533 (5th Cir. 1993), *cert. denied,* 114 S.Ct. 1630 (1994); *United States v. Sanders*, 994 F.2d 200, 204 (5th Cir.), *cert. denied*, 114 S.Ct. 408 (1993). Nor was the district court compelled to credit Ruiz's testimony in this respect.

10

officer or others nearby, and may realistically be characterized as something less than a 'full' search, even though it remains a serious intrusion." *Id.* In an effort to shape the inquiry necessitated by this conclusion, the Court elaborated that:

> "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger . . . And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." *Id.* at 1883 (citations omitted).

*See also Sanders*, 994 F.2d at 203; *United States v. Michelletti*, 13 F.3d 838, 840-841 (5th Cir.) (en banc), *cert. denied*, 115 S.Ct. 102 (1994).

In the present case, Officer Lowen had numerous facts to consider in reaching the decision to pat Lancaster down. First, of the two persons who had accompanied Lancaster to the Hypermart, one had been immediately arrested pursuant to an outstanding warrant and the other, to the best of Lowen's knowledge, was at that moment being arrested for then possessing a controlled substance. Second, even though Lowen was not planning on arresting Lancaster, he did intend to leave Lancaster in the back seat of his squad car while he assisted Officer Blair with Medrano; Lowen testified that he did not want to put anyone into his squad car who might have had a gun. Third, Lowen had observed Lancaster's nervous demeanor, and had concluded, based on his thirteen years of experience with the police department, that Lancaster was possibly "on amphetamine." Fourth, Lancaster had made inconsistent statements to police

11

officers, perhaps indicating that he had something to hide. Finally, it was dusk, and most likely the visibility would be further reduced by the time Lowen returned to Lancaster and the squad car. In light of these facts, we conclude that Lowen acted as a reasonably prudent officer when he decided to pat Lancaster down for a weapon before putting him in the patrol car. Lowen testified that he acted out a concern for "pure officer safety," and the facts adequately support his reasonable inference that, under the circumstances, it might have been unsafe to place Lancaster into the car without first frisking him. We hold that Lowen's actions fell within the parameters of a valid *Terry* stop, and did not violate Lancaster's Fourth Amendment rights.[3]

Once Lancaster volunteered that he had marihuana in his possession, Lowen had probable cause to arrest Lancaster. The Supreme Court has clarified that probable cause for arrest exists when "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 103 S.Ct. 2317, 2332 (1983). Lancaster's arrest did not, therefore, violate his Fourth Amendment rights.

Accordingly, the district court did not err in denying Lancaster's motion to suppress evidence. The judgment of the district court is

AFFIRMED.

---

[3]We also note that the Supreme Court has cautioned against "second-guessing" a police officer faced with a swiftly-developing situation such as this one. *United States v. Sharpe*, 105 S.Ct. 1568, 1575 (1985).